# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 17-1831V
Filed: June 28, 2019
UNPUBLISHED

| | |
|---|---|
| AFSHIN KHAN,<br><br>                 Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                 Respondent. | Special Processing Unit (SPU);<br>Finding of Fact; Onset; Influenza<br>(Flu) Vaccine; Shoulder Injury<br>Related to Vaccine Administration<br>(SIRVA) |

*Alison H. Haskins*, Maglio Christopher & Toale, PA, Sarasota, FL, for petitioner.
*Justine Elizabeth Walters*, U.S. Department of Justice, Washington, DC, for respondent.

### FINDING OF FACT – SPECIAL PROCESSING UNIT[1]

**Dorsey**, Chief Special Master:

On November 22, 2017, petitioner filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*,[2] (the "Vaccine Act"). Petitioner alleges that she suffered a left shoulder injury resulting from her October 4, 2016 influenza ("flu") vaccination. Petition at 1-3. A shoulder injury related to vaccine administration, or "SIRVA," is entitled to a presumption of causation if the injury meets the criteria set forth in the statutory Qualifications and Aids to Interpretation ("QAI") (42 C.F.R. § 100.3(c)(10)) and the first symptom or manifestation occurs within forty-eight hours (42 C.F.R. § 100.3(a)(XIV)). In this case, however, respondent contends that there is not preponderant evidence that petitioner's injury manifested within 48 hours of vaccination. For the reasons described below, the

---

[1] The undersigned intends to post this ruling on the United States Court of Federal Claims' website. **This means the ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access. Because this unpublished ruling contains a reasoned explanation for the action in this case, undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755.

undersigned now finds that there is preponderant evidence that petitioner's shoulder injury manifested within forty-eight hours of her vaccination.

## I. Procedural History

As noted above, petitioner filed her petition on November 22, 2017. (ECF No. 1.) To support the petition, she initially filed medical records marked as Exhibits ("Ex.") 1-7 on November 29, 2017. (ECF No. 6.) She later filed an affidavit marked as Exhibit 8 on December 15, 2017. (ECF No. 9.) This affidavit was limited to confirming that she meets the jurisdictional requirements of this Program. (*Id.*) Updated medical records marked as Exhibits 9 and 10 were filed on May 1 and July 31, 2018. (ECF Nos. 14, 22.)

On September 7, 2018, respondent filed a status report indicating that he was willing to engage in tentative settlement discussions. (ECF No. 23.) While the parties attempted to reach an informal resolution, petitioner filed updated medical records marked as Exhibits 11 and 12 as well as a narrative affidavit by petitioner marked as Exhibit 13 describing the onset and course of her shoulder injury. (ECF No. 26.)

On November 8, 2018, petitioner filed a status report indicating that the parties' settlement discussions had stalled and requested that respondent file his Rule 4 Report. (ECF No. 29.) Respondent filed his report on April 19, 2019. (ECF No. 32.) In his report, respondent recommended that compensation be denied in this case. (*Id.* at 1.)

Relevant to this finding of fact, respondent contended that "[i]t is unclear from the medical records when after vaccination the onset of petitioner's symptoms occurred and she did not seek treatment until seven weeks later. Therefore, there is not a preponderance of evidence that the onset of petitioner's condition occurred within forty-eight hours of vaccination as required under the Vaccine Injury Table."[3] (ECF No. 32, p. 5.)

Upon review of the record evidence and respondent's report, the undersigned concluded that a fact finding as to the onset of petitioner's shoulder injury would be appropriate. (ECF No. 33.) The undersigned allowed the parties 30 days, until May 28, 2019, to file any additional evidence they wished to have considered. (*Id.*) The undersigned also indicated that briefs are not necessary. (*Id.*) However, on May 28, 2019, petitioner filed motion for extension of time in order to file a witness affidavit by her brother regarding the onset of her condition. (ECF No. 34.) Petitioner subsequently filed the affidavit, marked as Exhibit 14, on June 10, 2019, (ECF No. 38-2.)

The case is now ripe for the undersigned's finding of fact.

## II. Factual History

In reaching her conclusion, the undersigned has reviewed the entirety of the records filed in this case; however, for purposes of this limited fact finding, only a few of those records are highlighted herein.

---

[3] Respondent also indicated that petitioner has not established a cause-in-fact claim; however, petitioner has not to date been provided an opportunity to obtain an expert opinion in this case.

Petitioner received an intramuscular influenza vaccination in her left deltoid on October 4, 2016. (Ex. 1.) Her prior medical history raised no concern of any shoulder or musculoskeletal problems. (*See, e.g.* Ex. 5, pp. 2, 15.)

In her affidavit, petitioner described this vaccination as having "bled more than normal." (Ex. 13, p. 1.)  She further stated that "[w]ithin a few hours of the shot, I started to experience pain in my left shoulder which progressively became worse over the next few days." (*Id.*)  She specifically recalled having difficulty sleeping the night after she received her vaccination due to her left shoulder pain. (*Id.* at 2.) She further indicated that her range of motion in her left shoulder was "severely compromised within 24 hours after receiving the vaccination." (*Id.* at 1.)  She described difficulty lifting more than "a few ounces" and that she had difficulty abducting her left arm. (*Id.* at 2.) She specifically recalled having difficulty changing clothes, brushing her hair, and pushing open doors. She also indicated that she had difficulty driving. (*Id.* at 1-2.)

Additionally, petitioner's brother, Shahid Alaf Khan, averred that at the time of her October 4, 2016 flu vaccine petitioner told him of her pain.  (Ex. 14, p. 2.)  Mr. Khan recalls that on the day she received the vaccination, his sister experienced shoulder pain within few hours and "immobility" by the following day.  (*Id.*)  Mr. Khan explains that because his sister was a first-year medical student far from home, he stayed in touch with her regularly out of concern for her well-being.  (*Id.*)  Mr. Khan recalls comforting petitioner and reassuring her that her pain would probably subside in the a few days.  (*Id.*)  When it did not, Mr. Khan describes several accommodations petitioner made to continue her daily life in the weeks following her vaccination.  (*Id.*)

On November 22, 2016, exactly seven weeks after her October 4 vaccination, petitioner was seen at a student health center at Tulane University. (Ex. 7, p. 38.) Petitioner's chief complaint as recorded by the intake nurse was listed as "Trouble raising her left arm and lifting things with left arm."  (*Id.*)  A further comment from the nurse intake indicated that it "[s]tarted after flu shot given, has gotten better but it's still there." The nurse recorded a duration of symptoms as "2 months." (*Id.*)

Petitioner's physician recorded that petitioner "comes in today complaining of 2 months of recurrent left shoulder pain which she associates with the flu shot. She received the injection in deltoid area and describes the pain as being localized in the anterior shoulder area." (*Id.* at 39.)  Petitioner was diagnosed as having bicipital tendinitis of the left shoulder.  (*Id.*)

Petitioner returned to her physician for follow up on December 2, 2016. (Ex. 7 at 40-42.)  Onset of her condition was not further discussed. She was referred to physical therapy (*Id.* at 43.)

Petitioner presented for an initial evaluation by her physical therapist on December 8, 2016, approximately nine weeks after her vaccination. (Ex. 3, p. 2.)  At that time, the physical therapy recorded onset of petitioner's condition as "approx.[imately] 2 months ago secondary to flu shot." (*Id.*)

3

After pursuing a course of physical therapy, petitioner had an MRI study completed on February 27, 2017. (Ex. 4, pp. 2-3.)  At that time, petitioner's history indicated that "patient has been symptomatic since October 2016, no known trauma . . ." (*Id.* at 2.)

Petitioner was subsequently seen by an orthopedist on March 10, 2017. (Ex. 6, pp. 12-14.)  The orthopedist recorded a history indicating that petitioner presented with a chief complaint of pain "of insidious onset." He further recorded that "she has had shoulder pain since her flu shot in the left shoulder last fall. Since that time, she has had weakness and pain in her shoulder . . . Other than her flu shot, she denies any history of trauma. She has never had shoulder pain prior to this." (Ex. 6, p. 12.)

Although petitioner continued treatment, the onset of her shoulder pain was not revisited again until she returned to the Tulane student health center on February 19, 2018.  (Ex. 10, pp. 47-49.)  At that point, petitioner reportedly characterized her pain as "chronic left sided shoulder pain for 1.5 y[ears]." (*Id.* at 48.)

Thereafter, petitioner continued to seek treatment of her ongoing shoulder injury. On July 18, 2018, following a second MRI study, petitioner's orthopedist opined that "MR left shoulder shows a bursitis with some inflammation and a nodule consistent with her history of the vaccine causing an inflammation in the shoulder." (Ex. 11, p. 62.)

### III.   Legal Standard

A petitioner must prove, by a preponderance of the evidence, the factual circumstances surrounding her claim. 42 U.S.C. § 300aa–13(a)(1)(A).  To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony.  *Burns v. HHS,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). Contemporaneous medical records are presumed to be accurate.  *Cucuras v. HHS*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. HHS,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. HHS,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

Pursuant to the Vaccine Act, the special master may find the time period for the first symptom or manifestation of onset required for a Table injury is satisfied "even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such a period." § 13(b)(2).  "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset . . . occurred within the time period described in the Vaccine Injury Table." (*Id.*; *accord Tenneson v. HHS*, No. 16-1664V, 2018 WL 3083140, at *5 (Fed. Cl. Spec. Mstr. Mar. 30, 2018) (finding, despite prior records indicating non-tender extremities, that "respondent unreasonably dismisses petitioner's contemporaneous treatment

4

records since the records were not created contemporaneously with the onset of petitioner's shoulder pain."), *mot. for rev. denied*, 142 Fed. Cl. 329 (2019)).

Despite the weight afforded medical records, special masters are not bound rigidly by those records in determining onset of a petitioner's symptoms. *Vallenzuela v. HHS*, No. 90-1002V, 1991 WL 182241, at *3 (Fed. Cl. Spec. Mstr. Aug. 30, 1991); *see also Eng v. HHS*, No. 90-1754V, 1994 WL 67704, at *3 (Fed. Cl. Spec. Mstr. Feb. 18, 1994) (Section 13(b)(2) "must be construed so as to give effect also to § 13(b)(1) which directs the special master or court to *consider* the medical records (reports, diagnosis, conclusions, medical judgment, test reports, etc.), but does not require the special master or court *to be bound* by them").

### IV.  Discussion

Significant to the issue presented herein, the Vaccine Act specifically instructs that "[t]he special master or court may find the first symptom or manifestation of onset or significant aggravation of an injury, disability, illness, condition, or death described in a petition occurred within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." § 300aa-13(b)(2).

However, petitioner must demonstrate by preponderant evidence that the first onset did occur within the specified time frame. § 300aa-13(b)(2). Indeed, petitioner has the burden in all instances of demonstrating the facts necessary for entitlement to an award by a "preponderance of the evidence." § 300aa-12(a)(1)(A).  Under that standard, the existence of a fact must be shown to be "more probable than its nonexistence." *In re Winship*, 397 U.S. 358, 371 (1970) (Harlan, J., concurring).

Here, the undersigned finds preponderant evidence that petitioner's injury occurred within forty-eight hours of her October 4, 2016 flu vaccination. Most notably, petitioner's medical records reflect that she explicitly and consistently associated her injury with her flu vaccination to three different medical providers. (*See* Ex. 7, p. 38; Ex. 3, p. 2; Ex. 6, p. 12.) Moreover, this history is further supported by petitioner's affidavit which describes the immediate onset of petitioner's condition in greater detail as well as by her brother's affidavit which likewise describes petitioner's pain beginning the day of vaccination. (Exs. 13, 14.)

Of course, medical records generally "warrant consideration as trustworthy evidence." *Cucuras,* 993 F.2d at 1528. Respondent contends, however, that these medical records leave the onset of petitioner's condition "unclear" and that they do not provide preponderant evidence that petitioner's condition occurred within forty-eight hours of vaccination. (ECF No. 32, p. 5.)  The undersigned disagrees.

The undersigned has previously observed in prior SIRVA cases that histories of present illness reported by patients may include imprecise or generalized recollections of onset that should not be overanalyzed where they are consistent with the appropriate timeframe. *See, e.g. Cooper v. HHS*, No. 16-1387V, 2018 WL 1835179, n.13 (Fed. Cl. Spec. Mstr. Jan. 18, 2018) (finding that although petitioner reported onset as a

5

generalization, "[i]t is sufficient that, petitioner's vaccination having occurred on October 30, the reported timeframe of early November reflected by the record as a whole does encompass the 48 hour post-vaccination period."). This is particularly so in a case such as the instant case where petitioner's treating physicians felt the history provided by petitioner was sufficient to attribute her condition to the vaccination.

In this case it is clear throughout petitioner's treatment history that her physicians understood petitioner to be reporting that her shoulder pain began immediately after her vaccination. Specifically, although petitioner first reported her pain as having begun two months prior when, in fact, her vaccination had been only seven weeks prior, petitioner did explicitly link or "associate" her shoulder pain to her vaccination. (Ex. 7, p. 39.) Additionally, petitioner's orthopedist later recorded a history indicating that petitioner had shoulder pain "since" the time of her flu shot. (Ex. 6, p. 12.) These notations suggest that the physicians understood the time or date of vaccination as marking the reported onset of petitioner's shoulder condition. Moreover, the orthopedist felt that petitioner's history was sufficient to opine that her shoulder injury was, in fact, vaccine-caused.[4] (Ex. 11, p. 62.)

Thus, taken as a whole, the undersigned finds that petitioner's medical records place the onset of petitioner's shoulder injury within forty-eight hours of vaccination. Upon the undersigned's review, the contemporaneous treatment records reflect that her treating physicians understood and recorded, consistent with petitioner's sworn affidavit, that her condition had an immediate onset following vaccination.

### V. Conclusion

The undersigned finds that there is preponderant evidence in this case that petitioner's left shoulder pain, alleged by petitioner to be related to her October 4, 2016 influenza vaccination, did manifest within forty-eight hours of vaccination consistent with the requirements for a SIRVA under the Vaccine Injury Table and Qualifications and Aids to Interpretation. 42. C.F.R. §§ 100.3(a)(XIV) and (c)(10)(ii).

**Accordingly, respondent shall file, by no later than Monday, August 12, 2019, an amended Rule 4 Report reflecting respondent's position in light of the above fact finding.**

**IT IS SO ORDERED.**

<u>s/Nora Beth Dorsey</u>
Nora Beth Dorsey
Chief Special Master

---

[4] The undersigned does not at this time reach the further question of whether this statement by petitioner's orthopedist in his treatment records is in itself sufficient to establish causation. Nonetheless, the statement is probative regarding the orthopedist's understanding of the nature of petitioner's injury and the history of onset provided by petitioner for treatment purposes.

6